UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

John Daniels,

                     Plaintiff,

**Hon. Hugh B. Scott**

                     v.

10CV885
(Consent)[1]

**Decision &
Order**

Doctor Douglas et al.,

                     Defendant.

_____

Before the Court is the defendants' motion for partial dismissal of the complaint. (Docket No. 34).

**Background**

In his initial complaint, the plaintiff, John Daniels' ("Daniels"), asserts that Dr. Douglas, Dr. Lewis[2] and Nurse Arnold[3] denied him proper medical treatment while he was incarcerated at

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docket No. 9)

[2] The record does not reflect that personal service was effectuated upon Dr. Lewis inasmuch as the process was returned unexecuted. (Docket No. 22). However, answers to the original and supplemental complaints had already been filed on behalf of Dr. Lewis. These answers do not assert a lack of personal jurisdiction over Dr. Lewis (Docket No. 6 and 20). Thus, Dr. Lewis has submitted to the jurisdiction of the Court pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

[3] The plaintiff does not provide the first names of the defendants.

1

the Orleans Correctional Facility ("OCF"). (Docket No. 1). Among other things, Daniels alleges that the defendants failed to properly treat him for testicle pain relating to hypogondadism (Docket No. 1 at ¶¶ 9-10). The plaintiff claims that the infectious disease specialist appointed by DOCCS to address the plaintiff's HIV related medical concerns prescribed testosterone cypionate for this condition. (Docket No. 1 at ¶ 11). Daniels asserts that his condition is outside the scope of Dr. Douglas' and Dr. Lewis' medical experience and requested that he be sent to see a urologist and a hormonal specialist. The plaintiff states that these requests were denied. (Docket No. 1 at ¶¶ 12-15). Daniels asserts that this testosterone level was too high and that Dr. Douglas and Dr. Lewis made adjustments to his prescribed testosterone dosage. The plaintiff contends that as a result of these adjustments, he experienced an over active urination condition, extreme testicle pain, testicle shrinkage, and constant pain running down his arm into his finger tips. (Docket No. 17-21). Daniels claims that on more than one occasion, Nurse Arnold "ejected over half of plaintiff's replacement shot on the floor," telling Daniels that his testosterone level was too high and that the testosterone shots were making him aggressive. (Docket No. 1 at ¶ 22). The plaintiff further asserts that when he advised Dr. Douglas that he was experiencing the pain in his shoulder, arm and fingers, Dr. Douglas did not refer him to a neurologist or provide pain medication, but referred Daniels to a mental health specialist. (Docket No. 1 at ¶ 25). Daniels claims that because the defendants could not get his testosterone under control, they terminated his testosterone replacement therapy with complete disregard to his health. (Docket No. 28-29). The plaintiff claims that this conduct violated his Eight Amendment rights. (Docket No. 1 at ¶

32).[4]

After the defendants' answer to the initial complaint was filed (Docket No. 6) and a scheduling order was issued (Docket No. 8), Daniels moved to supplement his complaint (Docket No. 11). The defendants advised the Court that they did not oppose the motion to supplement. (Docket No. 16). Thus, the plaintiff's motion was granted and the U.S. Marshal was directed to serve the defendants. The plaintiff's supplemental complaint names 8 new individual defendants, 5 John Doe[5] defendants and the County of Orleans[6] as defendants. The newly named defendants include: Sibatu Khahaifa, Superintendent of the OCF ("Khahaifa"); Mr. Fitts, Supervisor of Inmate Grievances at OCF ("Fitts"); Ms. Neal, Nurse Administrator at OCF

---

[4] Daniels states that the defendant's "violated plaintiff's right to be free from cruel and unusual punishment by tampering with, and experimenting with the plaintiff's testosterone replacement therapy." (Docket No. 1 at ¶ 32). Daniels also asserts that the defendants violated his First Amendment right to "petition for redress of grievance" but does not appear to state the factual basis of any such claim. (Docket No. 1 at ¶ 32).

[5] One of the John Doe defendants, John Doe 4, has been identified and service was executed upon Michael Hogan, Commissioner of the New York State Office of Mental Health ("OMH") (Docket No. 31). The remaining John Doe defendants, who have not yet been identified, are intended to represent "the supervisor and staff of the Correspondence Department at OCF (the mail room staff at OCF) [John Does 1-3] and the "Unit Chief of the New York State Office of Mental Health" [John Doe 5].

[6] The County of Orleans has not yet been served in this matter. The only allegation relating to The County of Orleans contained in the Supplemental Complaint is that it was the "moving force" behind the defendants' actions pursuant to the "official unwritten policy established at [the Orleans Correctional Facility] by defendant Khahaifa for the County of Orleans." (Docket No. 17 at ¶ 5). It appears that the plaintiff mistakenly believes that the Sibatu Khahaifa, the Superintendent of the Orleans Correctional Facility, works for Orleans County. The Orleans Correctional Facility is a state facility that has no connection to the County of Orleans. The plaintiff has failed to articulate any relationship between Khahaifa and Orleans County. Daniels has failed to allege any conduct on behalf of any employee of Orleans County. Inasmuch as the plaintiff's Supplemental Complaint has failed to include facts which state a claim against the County of Orleans, the Supplemental Complaint is dismissed as against the County of Orleans pursuant to 28 U.S.C. §1915(e)(2).

("Neal"); Ms. Hicks, Correctional Counselor at OCF ("Hicks"); Ms. Caswell, Correctional Counselor at OCF ("Caswell"); Ms. Hernandez, Correctional Counselor at OCF ("Hernandez"); B. Abrunzo ("Abrunzo"), Supervisor of Inmate Grievances at the Elmira Correctional Facility ("ECF"); and J. Northrup, Nurse Practioner at ECF ("Northrup"). In the Supplemental Complaint, Daniels alleges that he was retaliated against for filing a law suit in violation of New York State Corrections Law § 138(4) and that "OCF defendants" deliberately created unsafe living conditions in violation of New York Corrections Law §70(2)(c). (Docket No. 17 at ¶19). In this regard, the plaintiff claims that while incarcerated at ECF, Nurse Northrup denied Daniels his "Andro Gel" treatment which had been prescribed. The plaintiff asserts that he filed a grievance based upon Northrup's conduct. (Docket No. 17 at ¶¶20-27). Daniels contends that in retaliation for filing the grievance, he was immediately transferred from ECF to the Wyoming Correctional Facility ("WCF"). (Docket No. 17 at ¶ 28). The plaintiff states that at WCF he was initially housed with an individual named "Streets" who was a member of the "Bloods" gang. Due to threats from Streets and other gang members, Daniels was moved to the other side of the facility and eventually placed in protective custody. (Docket No. 29-31). Daniels was then transferred to OCF, where he contends he had previously had "multiple incidents" with members of the Bloods housed there. He advised officials at OCF of this history during processing and was placed directly in the Special Housing Unit ("SHU") for safety reasons. (Docket No. 17 at ¶¶32- 35). Daniels asserts that despite this safety concern, he was not transferred out of OCF in retaliation because he had filed the law suit against the OCF medical staff. The plaintiff's request for "protective custody" status was also denied and the plaintiff was directed to leave SHU. Daniels refused to leave SHU due to his personal safety concerns. He received a misbehavior

4

report for failing to leave SHU and was eventually sentenced to 30 days in SHU based upon the alleged infraction. (Docket No. 17 at ¶¶36-46). Daniels asserts that he wrote to Neal regarding to his inadequate medical treatment at OCF (Docket No. 17 at ¶47). The plaintiff states that he wrote to DOCCS' Counsel's Office and the Committee on Open Government complaining of defendant Caswell's failure to process a Freedom of Information Act ["FOIA"] request, but that the mail room staff refused to send his letter to the Committee on Open Government because they did not consider it to be "legal" mail. (Docket No. 17 at ¶¶48-51). Daniels claims that he wrote to Dr. Lewis to complain that he was not getting the Andro Gel treatment, but that Dr. Lewis did not respond. (Docket No. 53). After serving his 30 day SHU sentence, Daniels was again told he was to leave SHU, but he refused to leave. (Docket No. 17 at ¶55). He again received a misbehavior report for failing to leave SHU and was eventually sentenced to 60 days of SHU based upon that infraction. (Docket No. 17 at ¶56-57). On June 15, 2011, defendant Hernandez submitted a transfer request on Daniels behalf, but was subsequently advised by Hernandez that the request was denied. (Docket No. 17 at ¶¶ 58-59). On June 17, 2011, the plaintiff asserts that he was taken to an outside hospital because he had passed out due to chest pain, difficulty breathing and anxiety from the isolation. He was returned to OCF on June 18, 2011 with medication for his blood pressure and anxiety, and placed on a medical diet. After staying in the OCF infirmary for two days, he was returned to SHU on June 20, 2011. (Docket No. 17 at ¶¶60-62). Daniels states that he suffered an anxiety attack on June 19, 2011 but was not provided his anxiety medication. He also asserts that he requested mental heath service, but was not seen by anyone from mental health and did not receive prescribed medical care. (Docket No. 17 at ¶¶ 63-65). Daniels claims that on June 20, 2011, Dr. Lewis "retained" the plaintiff's HIV

5

medications forcing Daniels to miss 10 doses of HIV medications and that Dr. Lewis failed to do anything to relieve the pain the plaintiff was experiencing. (Docket No. 17 at 66-67). Daniels claims that he submitted a request for medical records, but did not receive any response (Docket No. 17 at ¶69). He states that he wrote defendant Neal on July 15, 2011 regarding his medical treatment and that Neal responded by advising Daniels that his request for testosterone treatment was pending approval from "Albany." (Docket No. 17 at ¶¶70-71). Finally, Daniels states that he wrote to defendant Caswell on July 18, 2011 regarding his request for mental health treatment and his transfer request. (Docket No. 17 at ¶ 72). Based upon these allegations, the Supplemental Complaint asserts that following additional claims:

1. Retaliation by OCF staff for filing a §1983 action (Docket No. 17 at ¶¶ 74-76).

2. Interference with Plaintiff's legal mail by the OCF mail room staff. (Docket No. 17 at ¶¶77-79).

3. Violation of 7 N.Y.C.R.R. §5.35(d) based upon Caswell's refusal to process plaintiff's April 29, 2011 FOIA request. (Docket No. 17 at ¶80).

4. Deliberate indifference by Neal in refusing to address plaintiff's 8th Amendment claims regarding Dr. Lewis's "medical mistreatment." (Docket No. 17 at ¶¶81-84)

5. Deliberate indifference with respect to plaintiff's serious medical needs by Dr. Lewis and Dr. Douglas (Docket No. 17 at ¶¶ 85-94).

6. Unlawful punitive confinement of the plaintiff in SHU in violation of the 8th Amendment (Docket No. 17 at ¶¶95-100).

7. Deliberate indifference as to the mental health needs of inmates by Khahaifa and OMH (Docket No. 17 at ¶¶ 101-

6

110).⁷

8. Manipulation of the grievance program by defendant Fitts in violation of the plaintiff's First, Eighth and Fourteenth Amendments. (Docket No. 17 at ¶¶111 - 112).

9. Khahaifa maintained policies condoning the violation of plaintiff's rights and the deliberate indifference to his medical needs (Docket No. 17 at ¶¶ 113- 122).

10. Northrop's interference with the plaintiff's prescribed medical treatment (Docket No. 17 at ¶¶123 -128).

11. Abrunzo's interference with plaintiff's grievances against Northrop (Docket No. 17 at ¶¶ 129 - 134).

**Defendants' Motion for Partial Dismissal**

Standard of Review

The defendants move to dismiss some of the claims in the Complaint and Supplemental Complaint pursuant to rule 12(b)(6) and Rule 12(c). (Docket No. 34). Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b)(6). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.2001). Accordingly, the court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendants. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998); Cohen v. Koenig, 25 F.3d 1168, 1171–72 (2d

---

⁷ The plaintiff appears to assert this claim on behalf of himself an other inmates. This is not a class action lawsuit and Daniels is the only named plaintiff. Inasmuch as the plaintiff is not an attorney, he cannot represent other inmates at OCF. For the purposes of this action, this claim will be construed as being asserted only as to Daniels.

7

Cir.1994); Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. Albany Welfare Rights Org. Day Care Ctr., Inc. v. Schreck, 463 F.2d 620 (2d Cir.1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). The court is required to read the complaint broadly and with great latitude on a motion to dismiss. Yoder v. Orthomolecular Nutrition Inst., 751 F.2d 555, 558 (2d Cir.1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985).

The Supreme Court has clarified the pleading standard required to withstand a motion to dismiss. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565-66 (2007)(Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)). Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions. Iqbal, 556 U.S. at 680-681. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir.2010) (quoting Iqbal, 556 U.S. at 680). The Court must then consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. Iqbal, 556 U.S. at 681; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009).

Thus, while the pleading standard Rule 8 announces does not require detailed factual allegations, it demands more than unadorned, conclusory accusations. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is not sufficient. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility requirement is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal, 556 U.S. at 681.

Official Capacity Claims Brought Against the Individual Defendants

The defendants seek to dismiss the §1983 and state law claims in the Complaint and Supplemental Complaint to the extent that they are asserted against the individual defendants in their official capacities. (Docket No. 35 at page 3-5). The Eleventh Amendment's grant of absolute immunity to the states extends to claims for damages against state officials sued in their official capacity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105

L.Ed.2d 45 (1989). Eleventh Amendment immunity typically deprives courts of jurisdiction over suits brought by private parties against State entities. Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). However, exceptions to this immunity exist when: (1) Congress has statutorily abrogated immunity, (2) the state voluntarily waives such immunity, or (3) the plaintiff sues for "prospective injunctive relief" from violations of federal law under the Ex Parte Young doctrine. In Re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir.2007). Congress has neither abrogated immunity with respect to Section 1983, 1985, or 1986 claims, Quern v. Jordan, 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), nor with respect to State law claims. Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540–41, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Second, New York has not waived its immunity to such claims. Finkelman v. New York State Police, 2007 WL 4145456, at *3 (S.D.N.Y. Nov.15, 2007) (explaining New York has not waived immunity to Sections 1983, 1985, and 1986 claims); Martin v. Baruch Coll., 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011) (explaining New York has not waived its immunity to state law claims brought in federal court). Thus, to the extent that plaintiff seeks money damages from the defendants in their official capacities, the Eleventh Amendment bars such claims. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Dunn v. Carrier, 2005 WL 1332761, at *2 (2d. Cir. 2005); Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir.1988); Amaker v. New York State Dept. of Correctional Services, 435 Fed.Appx. 52 (2d. Cir. 2011).

The plaintiff argues that to the extent that the defendant's motion to dismiss applies to the plaintiff's claims under the Rehabilitation Act ("RA") or the Americans with Disabilities Act ("ADA") they should be denied. (Docket No. 37 at page 7). The Complaint states that the

10

plaintiff's claims are being brought under the First and Eighth Amendments to the United States Constitution. (Docket No. 1 at page 1). The plaintiff does not assert that Dr. Lewis or Dr. Douglas failed to provide adequate medical treatment to him based upon his disability. There is no mention whatsoever of the ADA or the RA in the original Complaint. The Supplemental Complaint also states that the plaintiff's claims are being brought under the First, Eighth and Fourteenth Amendments. (Docket No. 17 at page 1). Neither the preliminary statement or jurisdiction statement refer to the ADA or the RA.[8] Although the plaintiff's Supplemental Complaint states that he was prevented from filing claims under the ADA (Docket No. 17 at page 2) and states that he wrote to defendant Neal about his medical treatment under Title II of the ADA Act and §504 of the RA (Docket No. 17 at ¶¶ 47, 82), the plaintiff does not set forth the elements or a claim under the ADA or the RA. Instead, Daniels' asserts that Neal, as Nurse Administrator, failed to see that Daniels received proper medical care in retaliation for bringing this law suit against Dr. Douglas and Dr. Lewis. (Docket No. 17 at ¶ 84). Such a retaliation claim is not based upon the plaintiff's disability. Reading the Complaint and Supplemental Complaint liberally, the plaintiff does not assert claims under the ADA or the RA. Cabassa v. Smith, 2010 WL 786312, at *3 (N.D.N.Y. 2010) (holding that a "challenge to the adequacy of medical care or health services is not a claim of 'illegal disability discrimination' as contemplated" by the ADA);

---

[8] To establish a prima facie case under the §504 of the Rehabilitation Act, a plaintiff must allege: (1) that he or she is a person with disabilities under the Rehabilitation Act, (2) who has been denied benefits of or excluded from participating in a federally funded program or special service, (3) solely because of his or her disability. Bryant v. New York State Educ. Dept., 692 F.3d 202 (2d. Cir. 2012). To state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability. Randolph v. Rodgers, 170 F.3d 850 (8th Cir. 1999).

11

Adams v. Hunsberger, 262 Fed.Appx. 478 (3d. Cir. 2008)(plaintiff failed to state a claim against any of the Appellees under the Americans with Disabilities Act, as he did not allege any discriminatory conduct based on his disability.); Rashad v. Doughty, 4 F. App'x 558, 560 (10th Cir.2001)("[t]he failure to provide medical treatment to a disabled prisoner, while raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation").

Thus, to the extent the plaintiff seeks monetary damages against the individual defendants in their official capacities, the motion to dismiss is granted.[9]

State Law Claims Barred by Corrections Law §24

The defendants also seek to dismiss the plaintiff's state law claims against the individual defendants in their personal capacities because they are barred by New York State Corrections Law §24. (Docket No. 35 at page 7). Section 24 provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment, and requires that such actions be brought in the New York Court of Claims as a claim against the state. N.Y. Correct. Law § 24; see also Ierardi v. Sisco, 119 F.3d 183, 186–87 (2d Cir.1997). Section 24 is not a bar to claims against corrections officers and employees under §1983. See Haywood v. Drown, 556 U.S. 729, 740–41, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). However, it does provide immunity for claims under state laws. "Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." Ierardi, 119 F.3d at 187. District courts

---

[9] Here, the plaintiff does seek injunctive relief compelling "the defendants" to provide the plaintiff with adequate medical care. (Docket No. 17 at page 29). However, Daniels is no longer at the OCF or the ECF. While this does not necessarily moot his claim for injunctive relief, it appears that none of the individual defendants are currently involved in his medical care.

should dismiss such claims for lack of subject matter jurisdiction. Baker v. Coughlin, 77 F.3d 12, 15–16 (2d Cir.1996); see also Blanche, 2009 WL 2499737 at *8; Joy v. New York, No. 5:09 Civ. 841, 2010 WL 3909694, at *4–5 (N.D.N.Y. Sept. 30, 2010) (collecting cases). Thus, the plaintiff's claims based upon the alleged violation of New York law asserted against the defendants in their personal capacities are dismissed.

**Service Issues**

As noted above, four of the five John Doe defendants have not yet been identified. The plaintiff contends that the identity of these individuals is uniquely within the possession of the defendants. (Docket No. 38). It is not clear from the record whether the plaintiff has presented sufficient information to the defendants to enable these individuals to be identified. **On or before October 11, 2013, counsel for the defendants shall advise the Court of why the identities of these individuals cannot be ascertained.** See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir.1997).

**Appointment of Counsel**

The plaintiff has moved for the appointment of counsel (Docket No. 38). There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following: (1)

Whether the indigent's claims seem likely to be of substance; (2) Whether the indigent is able to investigate the crucial facts concerning his claim; (3) Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) Whether the legal issues involved are complex; and (5) Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); *see also* Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir.2001); Abdur-Raqiyb v. Erie County Medical Center, 2006 WL 1800710, at *1 (W.D.N.Y.,2006).

The Court has reviewed the facts presented herein in light of the factors required by law as discussed above. At this time, it does not appear the legal issues presented are not unduly complex. Further, based upon the motion practice in this case, it appears that the plaintiff can adequately prosecute his claim *pro se*. Based on a review of the above factors, the plaintiff's motion for appointment of counsel is denied without prejudice at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654.

**Conclusion**

The defendant's motion to dismiss is granted consistent with the above. The plaintiff's motion for appointment of counsel is denied without prejudice at this time.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the

United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    So Ordered.

                                                                   /s/ Hugh B. Scott
                                               United States Magistrate Judge
                                               Western District of New York

Buffalo, New York
September 25, 2013