UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN DANIELS, 86-C-0867,

                              Plaintiff,

         v.

DOCTOR DOUGLAS et al.,

                              Defendants.

**DECISION AND ORDER**

10-CV-885-HBS
(Consent)

## I. INTRODUCTION

Pending before the Court are two motions. Defendants B. Abrunzo, Arnold, Caswell, Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Douglas, Fitts, Hernandez, Hicks, Sibatu Khahaifa, Lewis, Neal, and J. Northrop ("defendants" collectively) have filed a motion for summary judgment to dismiss the complaint and supplemental complaint of *pro se* plaintiff John Daniels ("Daniels"). (Dkt. No. 68.) Daniels, meanwhile, has filed a motion to compel. (Dkt. No. 75.) Defendants want the case dismissed because, according to them, Daniels did not exhaust administrative remedies for some grievances that defendants allegedly prevented him from filing or appealing. Defendants also argue that they provided medical care to Daniels in conformance with the standards of care for the procedures in question. Defendants reject Daniels's various other claims as too conclusory or as deficient with respect to alleging personal involvement. Daniels counters

defendants' motion by reasserting the claims in his complaint and supplemental complaint that defendants denied him the ability to file grievances, denied him access to the law library, and denied him certain medical treatments to the point of deliberate indifference.

With respect to the motion to compel, Daniels seeks certain materials including copies of his grievances from 2009 to the present; records of his requests for protective custody; and defendants' employee rule manual. Defendants oppose the motion to compel because they already provided all grievance-related discovery as part of their Rule 26 disclosure. Defendants also argue that the material that Daniels seeks will not affect the argument for summary judgment, and that he is making his request way too late in the course of the case.

The Court has deemed the motions submitted on papers under Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons below, the Court grants defendants' motion and denies Daniels's motion.

## II. BACKGROUND

For the sake of brevity, the Court will assume familiarity with the details of Daniels's allegations as stated in its Decision and Order of September 25, 2013.

(Dkt. No. 40.) Briefly, Daniels alleges two categories of culpable conduct from defendants in their individual capacities.[1]

In the first category, Daniels accuses defendants of various acts of retaliation. Defendants, according to Daniels, denied him access to the law library and the grievance process because he filed this case. Daniels alleges that defendants disciplined him unfairly for expressing fear for his safety. Daniels sought protective custody out of fear that other inmates with gang affiliations would hurt him. Defendants housed him briefly in the Special Housing Unit ("SHU") while investigating his concerns but then ordered him back to the general population. Defendants punished Daniels when he refused to leave the SHU by filing a misbehavior report charging him with refusing a direct order. Daniels did not want to attend the disciplinary hearing and pled guilty *in absentia*. (Dkt. No. 49-2 at 3.)

In the second category of alleged culpable conduct, Daniels accuses defendants of various instances of deliberate indifference to his medical needs. Daniels asserts that during his time at the Orleans Correctional Facility ("Orleans"), defendants refused to prescribe him Androgel testosterone cream or a dietary supplement called Ensure. Daniels claims to have been prescribed Androgel while he was housed at the Wende Correctional Facility ("Wende").

---

[1] In its prior Decision and Order, the Court dismissed any claims against any defendants in their official capacities. The Court also dismissed all state claims.

Daniels received Ensure upon transfer to the Elmira Correctional Facility ("Elmira") but not the Androgel. Multiple visits to the nursing staff at Orleans did not make Androgel available to Daniels. Other deficient medical treatments that Daniels has asserted include failure to provide certain doses of his HIV medications, failure to prescribe certain necessary testosterone injections, and failure to provide medication that would manage his neuropathy.

Defendants filed the pending motion on October 31, 2014. Defendants reject Daniels's claims about being prevented from filing or appealing certain grievances. Daniels, according to defendants, has made no showing that he was prevented from filing grievances and has made no showing that he prepared grievances that he attempted to file. Defendants note that Daniels's ability to complete at least some of his grievances undermines his argument that he lacked access to the grievance system. Defendants maintain that the medical care that they provided Daniels met the applicable standards of care and that any services denied to Daniels were either medically unnecessary or denied in favor of comparable services. Defendants reject Daniels's claims of retaliation as wholly conclusory. To the extent that Daniels has claimed interference with legal mail, defendants argue that Daniels has not alleged any actual injury from any interference. Finally, defendants argue that Daniels's claims of unlawful confinement or supervisory liability must fail for lack of personal involvement.

Daniels responds to defendants' various arguments by reasserting his allegations that defendants denied him certain medical treatments that were necessary and denied him access to the grievance system, to legal mail, and to the legal library as retaliation for filing this lawsuit.

Meanwhile, Daniels filed his motion to compel on January 5, 2015. Defendants already provided 158 pages of grievance, medical, and other records through their Rule 26 disclosure. (*See generally* Dkt. No. 49.) Nonetheless, Daniels in his motion seeks all grievances, related investigative reports, and grievance decisions from 2009 to the present "which [are] not listed in defendants' summary judgment motion." (Dkt. No. 75 at 1.) Daniels also seeks all records pertaining to his request for protective custody. Finally, Daniels seeks defendants' employee rule manual. Defendants oppose further discovery beyond their Rule 26 disclosure. Defendants argue that Daniels's motion constitutes a vain attempt to thwart summary judgment by trying to suggest that further discovery might raise a question of fact. Defendants argue that they already provided all relevant discovery and that any further discovery, if more were available, would not alter what the record already shows about their appropriate medical services and grievance management.

5

**III. DISCUSSION**

### *A. Summary Judgment Generally*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

While applying the general principles outlined above, the Court will grant Daniels some procedural leeway to accommodate his *pro se* status. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro*

6

*se* litigants. The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection . . . . The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings, motion papers, and appellate briefs." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted). "At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest; that we should not excuse frivolous or vexatious filings by *pro se* litigants; and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . . Under the circumstances, we must all do our best to gauge what is appropriate." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted).

### B. Retaliation

The Court will begin its substantive review by assessing Daniels's claims of retaliation. When making claims that a state actor retaliated against a plaintiff for exercising a constitutional right, "plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline

the plaintiff. If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff even in the absence of the protected conduct. Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citations omitted). "[The Second Circuit] has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Id.* at 80 (citations omitted). To satisfy their obligations under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).

A review of the record here reveals nothing over which reasonable jurors could deliberate at trial. Daniels overstates his claims of denial of access to the grievance system. For example, Daniels's letter of July 7, 2014 (Dkt. No. 78 at 9) contains a complaint about access to the law library. Defendants responded by letter on July 18, 2014. (Dkt. No. 78 at 11.) Defendants returned Daniels's materials not to shut him out of the grievance process, but rather to tell him to file

8

his grievance at his facility rather than with the central office in Albany. *See generally* 7 N.Y.C.R.R. § 701.5 (listing the central office as the third of three steps in the grievance procedure); *see also, e.g., Muhammad v. Pico*, No. 02 CIV.1052 AJP, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the [Prison Litigation Reform Act]'s exhaustion requirements.") (citations omitted). As another example, defendants did adjudicate grievances that Daniels filed concerning special boots, a knee brace, a bottom bunk, testicular pain, and unprofessional nurse conduct. (*See generally* Dkt. Nos. 49-5, 49-6.) Unfavorable results of grievances by themselves do not constitute denial of access to the system. *Cf. Brooks v. DiGuglielmo*, No. CIV.A. 05-4588, 2008 WL 5187529, at *6 (E.D. Pa. Dec. 9, 2008) ("The Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, and that the existence of this post-deprivation remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process.") (citations omitted). Daniels did in fact receive punishment for refusing to leave the SHU, and sanctions for refusing direct orders by themselves do not amount to Eighth Amendment violations. *Cf. Calvert v. State of New York*, No. 02-CV-6194 CJS, 2009 WL 3078864, at *10 (W.D.N.Y. Sept. 24, 2009) (Siragusa, *J.*) ("First, the thirty-day

SHU sentences, imposed after Plaintiff was found guilty on three separate occasions of refusing a direct order, did not violate the Eighth Amendment. In that regard, restraints on an inmate do not violate the amendment unless they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain. The SHU sentences at issue here do not rise to that level.") (internal quotation marks and citations omitted). Additionally, Daniels refused to attend the disciplinary hearing at which he could have articulated a specific threat or actual harm that he faced. (*See* Dkt. No. 49-2 at 3.) *See also, e.g.*, *Demaio v. Coughlin*, No. 89-CV-1237E(M), 1994 WL 714537, at *2 (W.D.N.Y. Dec. 9, 1994) (Elfvin, *J.*) ("An official demonstrates deliberate indifference when he has actual or constructive notice of a specific risk to an inmate's safety and fails to take steps to protect the inmate from injury . . . . [Plaintiff's] mere speculations concerning unnamed 'enemies' who might do him harm are insufficient because, given that all the facilities had available voluntary protective custody status, Coughlin and all the other cognizant prison officials had no rational basis to believe that one facility would be safer than another."). Finally, the discovery process that proceeded in this case created a sufficient record to allow for adjudication of Daniels's claims and to override his conclusory assertions about interference with mail and freedom of information requests.

Under these circumstances, no reasonable jury could conclude that Daniels suffered unlawful retaliation for filing grievances and commencing this case. Overall, the record indicates that Daniels instead received unfavorable outcomes for his grievances, and liability under Section 1983 simply does not rest on unfavorable outcomes. Other grievances that Daniels tried to bring directly to defendants' central office in Albany did not use the appropriate steps and thus did not exhaust administrative remedies. The Court thus grants defendants' motion with respect to any claims of retaliation.

### C. Medical Treatment

Next, the Court will review Daniels's allegations of deliberate indifference to medical needs for any issues that a jury should resolve. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. The standard of deliberate indifference includes both subjective and objective components. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v.*

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation and editorial marks and citations omitted).

Here, Daniels's disagreements over medical management do not cross the threshold for a genuine dispute of material fact. Defendants were aware of Daniels's low testosterone levels and managed them through blood draws and laboratory values. (*See* Dkt. No. 78 at 14.) When Daniels went to sick call and reported "feeling low," possibly from low testosterone levels (Dkt. No. 78 at 20), defendants responded by prescribing an intramuscular testosterone injection (Dkt. No. 78 at 22). A second intramuscular testosterone injection prescribed on April 13, 2011 was canceled the next day with a note that it was non-formulary. (*Id.* at 28.) Nonetheless, Daniels was receiving Androgel in March 2011 and again in April 2011. (Dkt. No. 78 at 18; Dkt. No. 70, off-docket medical record at Bates number 812 [hereinafter [812]].) The record also suggests that denials of Androgel or other testosterone medication corresponded with times when his testosterone levels were within the normal range. [*See* 810, 872]; *cf. Calderon v. Wheeler*, No. 9:06-CV-0963 GTS/DEP, 2009 WL 2252241, at *11 (N.D.N.Y. July 28, 2009) ("Substantial measures were taken by medical personnel . . . to track the cause of [plaintiff's] low testosterone levels, including by referral to an endocrinologist for consultation. The efforts to monitor and determine the source of plaintiff's low testosterone levels continued, and testosterone injections were

12

ultimately ordered . . . . From a review of the record of plaintiff's medical care while at Coxsackie, no reasonable factfinder could conclude that the defendants there were deliberately indifferent to his low testosterone level condition."). As for pain and HIV-related medications, the medical records indicate periodic prescriptions to address symptoms as Daniels reported them. Finally, defendants considered Daniels's request for special boots or a knee brace and considered the request medically unnecessary. (Dkt. No. 49-5 at 1.) All of this information leads the Court to conclude that the real issue here is a disagreement that Daniels has with defendants over the daily management of his chronic medical problems. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Armstrong*, 143 F.3d at 703. The Court is willing to credit Daniels with sincere concerns about his health and urges defendants to continue treating him as effectively as logistics and standards of care will allow. Daniels's disagreements, however, come nowhere near a showing of deliberate indifference, and no reasonable jury would say otherwise.

The Court thus grants defendants' motion with respect to Daniels's claims about medical treatments.

With no other categories of substantive claims remaining, Daniels's complaint and supplemental complaint will be dismissed in their entirety.

### D. Motion to Compel

Finally, the Court addresses Daniels's motion to compel, which could be construed as falling under either FRCP 37(a) or FRCP 56(d). "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FRCP 37(a)(1). Alternatively, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." FRCP 56(d)(2). Either way, courts have discretion to refuse further discovery if that discovery would not directly or indirectly affect the ultimate disposition of a party's allegations. *Cf. Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) ("[A] plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what

discovery might uncover.") (citation omitted); *accord Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989) ("As this Court has previously stated, a plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion."); *see also Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 152 (E.D.N.Y. 2008) ("Additionally, courts may deny a redundant discovery request.") (citations omitted).

Here, the nature of the information that led the Court to dismiss Daniels's substantive claims renders further discovery unnecessary. As explained above, the record already contains documentation of numerous grievances that Daniels filed and that defendants adjudicated from 2009 until 2012. Defendants have asserted that they have produced all discovery for the timeframe covered in Daniels's allegations, and Daniels has made no showing otherwise. The documentation already in the record eliminates the possibility that a reasonable jury could decide that defendants shut Daniels out of the grievance process. Further discovery thus would be unreasonably cumulative and futile. *See* FRCP 26(b)(2)(C). Under these circumstances, the Court denies Daniels's motion to compel.

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants defendants' motion for summary judgment (Dkt. No. 68) and denies Daniels's motion to compel (Dkt. No. 75).  The Clerk of the Court shall close this case.


SO ORDERED.

__/s/ Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: August 21, 2015